STATE OF MAINE

YORK, ss.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. AP-10-09
GAB-YOR - 1/10/2011

PATRICIA PEACH-LAMBERT,

Plaintiff

v.                                          ORDER

TOWN OF KENNEBUNK,

Defendant

Appellant Patricia Peach-Lambert appeals from the Town of Kennebunk's Site Plan Review Board's decision to approve a Major Site Plan Amendment and allow St. Martha's Catholic Church to create a rear-access drive connection to Dunroven Road and consolidate two existing accesses along Route 1 into a single curb-cut. Following hearing, the appeal will be Denied.

## BACKGROUND

St. Martha's Catholic Church is located along Route 1 in the Town of Kennebunk and is owned by the Roman Catholic Diocese of Portland. (R. at 13; M. of Roman Catholic Diocese to Intervene.) Dunroven Drive is a public way that ends in a cul-de-sac a short distance from the northeastern edge of St. Martha's rear parking lot. (See R. at 76.) The appellant, Ms. Patricia Peach-Lambert, resides on Longview Drive and abuts St. Martha's to the southwest, roughly opposite Dunroven Drive. (See R. at 4, 77.)

In 2003, the Diocese submitted a request to install rear-access from Dunroven Drive. (R. at 13.) The Town of Kennebunk's Site Plan Review Board (SPRB) denied the request at that time. (R. at 13.) The Diocese submitted a new request with a Major Site

Plan Amendment in 2009. (R. at 13.) A public hearing on the matter was scheduled for July 2, 2009. (R. at 8.) The hearing was well attended by members of the public and residents of Dunroven Drive. (*See* R. at 7–11.) There is no evidence that Ms. Peach-Lambert attended this hearing. After taking public comments, the SPRB closed the public hearing and voted to stay its review for three months or until the applicant submitted additional information on six specified topics. (R. at 12.)

The SPRB continued its review of the Amendment at its October 15, 2009 meeting. (R. at 13.) Public notice of the meeting was published in a local newspaper and placed on the Town's website, but abutters did not receive individual notice by mail. (Zoning Board of Appeals Decision at 2.) At the meeting, the Diocese presented the SPRB with new or updated information including: an updated traffic study; a study of the impact of traffic light synchronization; fire and police department comments; an assessment by the Department of Public Works; and information concerning negotiations with neighboring commercial landowners. (R. at 13–14.)

After examining the new information and updated plans, the SPRB determined that the proposed Amendment had not significantly changed since July 2, 2009, and no additional public hearing would be necessary. (R. at 14–15.) The primary alteration consisted of a plan to consolidate two existing curb cuts on Route 1 into a single driveway in order to avoid the necessity of a waiver for a third curb cut onto Dunroven Drive. (R. at 14–15.) After requesting further review by the Town's Traffic Engineer, the SPRB tabled discussion until its next regular meeting. (R. at 15–16.) On October 29, 2009, the SPRB unanimously approved the project. (R. at 21–22.)

On November 12, 2009, Mr. Donald Gnecco, a resident of Dunroven Drive, appealed the SPRB's decision to the Town of Kennebunk's Zoning Board of Appeals (ZBA). (R. at 23–26.) He acted on behalf of himself and "all of the homeowners of

2

Dunroven Drive, a street in the Longview Terrace subdivision . . . ." (R. at 23.) Mr. Gnecco argued in his written submission that the consolidation of the curb cuts on Route 1 was a "major change" that necessitated an additional public hearing, and that the Diocese had not made adequate efforts to secure an alternate exit through existing neighboring commercial parking lots. (R. at 25–26.)

Acting solely as an appellate body, the ZBA held a public hearing on Mr. Gnecco's appeal on December 21, 2009. (R. at 27, 36–37.) In addition to Mr. Gnecco, a number of other residents spoke at the hearing to raise their objections to the project. (R. at 37–41.) Appellant, Ms. Peach-Lambert, was among these. (R. at 40–41.) During the public hearing Ms. Peach-Lambert asked the Town Planner to clarify how notice was given for the SPRB's meetings and why individual notice was not mailed to abutters. (R. at 40–41.) After the hearing, the ZBA continued consideration of the appeal so that the board members could review the transcript and listen to the recording of the SPRB's meetings. (R. at 43–44.) The ZBA met again on January 19, 2010 and unanimously upheld the SPRB's decision. (Zoning Board of Appeals Minutes, Jan. 19, 2010, at 1, 3–6.) Ms. Peach-Lambert filed her appeal of the ZBA's decision pursuant to Rule 80B on March 5, 2010, forty-three days later.[1] (R. at 4.)

## DISCUSSION

As a preliminary matter, the Town and the Diocese object to Ms. Peach-Lambert's failure to file timely returns of service with the court. Indeed, they claim that Ms. Peach-Lambert never properly served the Town when she initiated this appeal, and request that the appeal be dismissed on this basis. Rule 80B requires an appellant to serve a complaint and summons on "all parties in accordance with the provisions of

---

[1] Appeals from municipal boards of review must be filed within forty-five days of the board's decision. 30-A M.R.S.A. §2691(3)(G) (2009).

Rule 4 ...." M.R.Civ.P. 80B(a) (2009). Rule 4 requires that service be made upon the town clerk, selectmen, or assessors, and that the plaintiff then file proof of that service with the court. M.R.Civ.P. 4(d)(5), 4(h) (2009). Rule 3 allows the court to dismiss actions in which no timely return of service is filed. M.R.Civ.P. 3 (2009).

Unlike Rule 3, "Rule 80B does not expressly provide for dismissal with prejudice as a sanction for failure to comply with any of its provisions." *Baker's Table v. City of Portland*, 2000 ME 7, ¶ 16, 743 A.2d 237, 242. While Rule 80B expressly incorporates Rule 4, the extent to which it incorporates Rule 3 is not clear. "Nonetheless, the court has the inherent authority to sanction a party's failure to comply with the rules." *Id.* While the court would undoubtedly be justified in exercising its discretion to dismiss Ms. Peach-Lambert's appeal for her failure to file proof of service, it will refrain. *See id.* ¶ 16, 743 at 143 (when exercising discretion to impose sanction, court should "fit the punishment to the crime"). Neither respondent has alleged or shown that it has been prejudiced by the appellant's failure to comply with the rules, and this matter is more properly resolved on the merits.

"When the Superior Court acts as an appellate court," it reviews "the operative decision of the municipality" directly. *Mills v. Town of Elliot*, 2008 ME 134, ¶ 13, 955 A.2d 258, 263 (quoting *Yates v. Town of Southwest Harbor*, 2001 ME 2, ¶ 10, 763 A.2d 1168, 1171) (quotations omitted). The operative decision is the one made by the officer or entity with "original jurisdiction, that is, [the] factfinder and decision maker ...." *Id.* (quoting *Yates*, 2001 ME 2, ¶ 10, 763 A.2d at 1171) (quotations omitted). In this case, Kennebunk's zoning ordinance only authorizes the ZBA to engage in appellate review of the SPRB's decision, making the SPRB's decision the "operative decision" for this court's review. *Id.; Compare* Kennebunk, Me., Zoning Ordinance, Art. 11, §§ 2(B)(6), 5.1(H) (giving the ZBA appellate jurisdiction over the SPRB) *with* § 5.2(J) (giving the

4

ZBA appellate jurisdiction and the authority to hold a de novo review of minor site plan applications). On appeal, the court reviews the record before the SPRB and its findings for errors of law or findings not supported by substantial evidence. *Your Home, Inc. v. Windham*, 528 A.2d 468, 470 (Me. 1987).

Having determined that the SPRB's decision is the one it must review, the court is presented with another preliminary detour before reaching the merits of this appeal. The Town and the Diocese challenge Ms. Peach-Lambert's standing to bring this appeal because she does not live on Dunroven Road and has not shown that she appeared at or participated in any hearing before the SPRB. To bring a Rule 80B appeal, "a party must (1) have appeared before the board of appeals; and (2) be able to demonstrate a particularized injury as a result of the board's action." *Wells v. Portland Yacht Club*, 2001 ME 20, ¶ 4, 771 A.2d 371, 373 (quoting *Sproul v. Town of Boothbay Harbor*, 2000 ME 30, ¶ 6, 746 A.2d 368, 371). "When the party appealing is an abutter, the party need only allege 'a potential for particularized injury' to satisfy the standing requirement." *Sproul*, 2000 ME 30, ¶ 6, 746 A.2d at 371. While not a resident of Dunroven Road, Ms. Peach-Lambert is still an abutter of the Church. She alleges that she will be injured by an increase in traffic in her neighborhood. (R. at 2.) Ms. Peach-Lambert did appear at the ZBA hearing, and has consequently met the low threshold of standing for abutting property owners.

This leads to the question of what issues have been preserved for appeal. Ms. Peach-Lambert's comments to the ZBA only addressed the notice given for the SPRB's meetings of October 15, 2009, and October 29, 2009. The respondents contend that she is limited to this issue on appeal. Generally, to preserve an issue, a party to an administrative proceeding must raise the issue to the agency in the first instance "to ensure that the agency, and not the court, has the first opportunity to pass upon the

claims of the parties." *Wells*, 2001 ME 20, ¶ 5, 771 A.2d at 373 (quoting *Oliver v. City of Rockland*, 1998 ME 88, ¶ 7, 710 A.2d 905, 907) (quotations omitted). "An issue is considered raised and preserved for appeal 'if there is sufficient basis in the record to alert the court and any opposing party to the existence of that issue.'" *Id.* (quoting *Farley v. Town of Washburn*, 1997 ME 218, ¶ 5, 704 A.2d 347, 349).

The SPRB issued the operative decision in this case, and it had the mandate to address all issues in the first instance. As an appellate body, this court will only concern itself with issues that were raised to the SPRB. Since Ms. Peach-Lambert has standing to bring this appeal, a corollary of the above is that all issues raised to the SPRB have been preserved.

Ms. Peach-Lambert first contends that the SPRB erred when it determined that the Diocese's proposal was not substantially changed after July 2, 2009; decided not to hold a new public hearing, and consequently did not provide abutters with personal notice of its October 15, 2009, and October 29, 2009 meetings. When a Major Site Plan Amendment is submitted to the SPRB, the applicant must mail copies of the plan to all abutting property owners. Kennebunk, Me., Zoning Ordinance, Art. 11, § 5.1(D). The SPRB holds a public hearing and must "cause notice of the date, time, and place of the hearing to be published in a newspaper of general circulation . . . [and] mail a copy of the hearing notice to all abutting property owners . . . ." Kennebunk, Me., Zoning Ordinance, Art. 11, § 5.1(E). Following the public hearing, the SPRB may extend the time for review if "additional submissions or plan revisions are needed," to a maximum of three months. Kennebunk, Me., Zoning Ordinance, Art. 11, § 5.1(E). There is no dispute that abutting landowners were adequately notified of the public hearing held on the Diocese's Major Site Plan Amendment held on July 2, 2009. The record shows that this hearing was well attended and a number of comments were raised about the

6

proposed connection to Dunroven Road. After the hearing, the SPRB exercised its authority to request additional information from the applicant and continue its review for three months. Nothing in the ordinance required the SPRB to give the abutters personal notice of the subsequent meetings.

Furthermore, for the purposes of this case, Kennebunk's ordinance defines a "Major Site Plan" as one involving "paving, stripping, removing earth materials, grading or regarding, . . . if the disturbed area is" 20,000 square feet or more. Kennebunk, Me., Zoning Ordinance, Art. 11, § 4. The revisions to the Diocese's proposal following the July 2, 2009 public hearing primarily involved consolidating the two existing curb cuts along Route 1 in order to comply with the limits established by the ordinance. Kennebunk, Me., Zoning Ordinance, Art. 11, § 8(6)(d). Given that this alteration does not impact the proposed access way to Dunroven Road, and does not materially alter the amount of ground to be disturbed, the SPRB could reasonably conclude that the revisions were not "major" and did not necessitate further public hearing. Nothing in the law or record compels this court to conclude otherwise.

Ms. Peach-Lambert's other points of appeal all concern the sufficiency of the evidence before the SPRB. Two of these points concern the necessity of the project and the affect it will have on nearby property values. The issue of property values was not addressed to the SPRB, and neither issue is relevant under the ordinance's approval criteria. *See* Kennebunk, Me., Zoning Ordinance, Art. 11, § 8. Ms. Peach-Lambert also challenges the adequacy of the buffer between the Dunroven Road access and the neighboring homes. The ordinance requires that "maximum screening" be achieved through the use of evergreens. Kennebunk, Me., Zoning Ordinance, Art. 11, § 8(2)(c). The SPRB found that two transplanted evergreens would provide an adequate buffer, and this court will not second-guess the SPRB's judgment. (R. at 71.)

7

The final three points of appeal challenge the project's safety. Ms. Peach-Lambert argues that Dunroven Road is not wide enough to accommodate the increased traffic and that a four-way intersection on Dunroven Road is unsafe. She also objects to the lack of sidewalks along Dunroven Road and the threat this poses to pedestrian safety. The ordinance requires that vehicular access be provided by "roads which have adequate capacity to accommodate ... additional traffic generated by the development." Kennebunk, Me., Zoning Ordinance, Art. 11, § 8(7). Under the circumstances of the Diocese's application, this requires the proposal to "meet the street design and construction standards contained in the Town's subdivision regulations." Kennebunk, Me., Zoning Ordinance, Art. 11, § 8(7)(a). The ordinance also requires that major site plans provide "for safe pedestrian circulation both on-site and off-site." Kennebunk, Me., Zoning Ordinance, Art. 11, § 8(8). Finally, the ordinance allows the SPRB to "waive or modify criterion" when it finds that strict compliance would result in unnecessary hardship and that "such waiver or modification will not affect the general health, safety, or welfare . . . ." Kennebunk, Me., Zoning Ordinance, Art. 11, § 9.

After receiving an updated traffic study and the opinions of the fire department, police department, and town traffic engineer, the SPRB voted to waive a requirement for sidewalks and curbing imposed through section 8(7)(a). (R. at 14, 16.) The SPRB found that requiring the Diocese to install a sidewalk and curbing along "this short section" of Dunroven Road "would not be appropriate since it would not connect to any other sidewalk." (R. at 72.) The SPRB went on to find that the application satisfied the ordinance's safety requirements. (R. at 21, 22, 72.) The SPRB's decision is supported by substantial evidence in the record, is consistent with the ordinance, and not otherwise erroneous.

## CONCLUSION

The court Denies Ms. Peach-Lambert's appeal and Affirms the decision of the SPRB.

Dated:        January 10 , 2011

G. Arthur Brennan
Justice, Superior Court

Plaintiff:
Patricia Peach-Lambert, Pro se
19 Longview Terrace
Kennebunk, ME 04043

Defendant's Attorneys:
Mark A. Bower, Esq.
Natalie Burns, Esq.
Jensen Baird Gardner & Henry
10 Free Street
Portland, ME 04112-4510

Intervenor's Attorney:
William L. Plouffe, Esq.
Drummond Woodsum & MacMahon
84 Marginal Way, Suite 600
Portland, ME 04101