In re ESTATE OF Lloyd J. WHITLOCK, a/k/a Lloyd J. Tracy.

Supreme Judicial Court of Maine.

Argued May 10, 1990.
Decided June 21, 1990.

Joseph T. Walsh, Jr. (orally), Bangor, for appellants.

Margaret Towle Campbell (orally), Cuddy & Lanham, Lewis Vafiades, Vafiades, Brountas & Kominsky, Nathan Dane, III, Bangor, for appellees.

Before McKUSICK, C.J., and ROBERTS, WATHEN, GLASSMAN and CLIFFORD, JJ.

McKUSICK, Chief Justice.

In this case we review a summary judgment entered by the Penobscot County Probate Court (*Woodcock, J.*) in favor of Valmore Tracy, personal representative of the estate of Lloyd J. Whitlock, a/k/a Lloyd J. Tracy. The judgment determined that the estate had been finally and completely settled by an Agreement Among Successors executed by Lloyd's successors in interest. Appellants Roger and Norman Tracy are half-brothers of Valmore and Lloyd. They seek to set aside the Agreement on the grounds that Valmore made material misrepresentations to them regarding the net distributable estate and number of distributive shares and that those misrepresenta-

tions induced their assent to the Agreement, rendering it voidable by them. We affirm the summary judgment to the extent that the parties settled on the net distributable estate by executing the Agreement with full knowledge of the inventory and accounting by which Valmore calculated it. We vacate, however, that portion of the summary judgment regarding determination of the number of distributive shares and remand for trial on that issue alone.

On Roger and Norman's appeal of the summary judgment we view the pertinent facts in the light most favorable to them. *See Philbrook v. Gates Formed–Fibre Products,* 536 A.2d 1118, 1119 (Me.1988). Lloyd J. Whitlock died intestate in Brewer in April 1987. He had no spouse or children and his parents predeceased him. Valmore Tracy, Lloyd's half-brother, was appointed personal representative of the estate. Roger and Norman, Lloyd's other half-brothers, promptly notified Valmore that they were uncertain whether Clair Turner, whom they all had assumed was Lloyd's half-sister, did in fact bear that relationship to him and whether she should be included in the distribution of his estate.[1] Valmore promised to investigate Clair's relationship to Lloyd and further told Roger and Norman that if in fact Clair was not Lloyd's half-sister, he personally would give her a share of the estate from his own distributive share. Roger and Norman questioned the estate inventories Valmore had prepared, contending that assets were missing and that the listed assets had been undervalued by an interested appraiser. They also challenged Valmore's accounting of the estate, including the amount of the fee paid the appraiser.

In October 1987 Roger, Norman, and Clair received from Valmore copies of the estate inventory and accounting, as well as a proposed Agreement Among Successors.

---

1. Lloyd, Norman, Roger, and Valmore were related through their mother, Elizabeth Manship Tracy Whitlock. Apparently Clair was brought into the household and brought up with the others as their half-sister. As listed on her birth certificate, however, Clair's mother was Irene Edwards. Roger stated in his deposition that

prior to her death, his mother had told him that she used Irene Edwards as a stage name. In the absence of confirmation that Elizabeth M.T. Whitlock and Irene Edwards were one and the same person, however, Clair's relation as Lloyd's half-sister is uncertain.

No changes had been made in the inventory and accounting despite Roger and Norman's objections to them. The Agreement divided the net estate remaining to be distributed, as established by the inventory and accounting, into four equal shares of $24,570 each going to Valmore, Roger, Norman, and Clair.[2] All four of them signed this Agreement. Valmore distributed the estate accordingly, and all of them negotiated their settlement checks.

■ Roger and Norman, however, continued to contest Valmore's conduct as personal representative. In December 1987 Valmore petitioned the Probate Court for an order of complete settlement, asking the court to approve the final settlement and distribution made in October pursuant to the Agreement and to close the estate. In their answer to that petition Roger and Norman contended that Valmore had made material misrepresentations regarding the net distributable estate when he presented them with copies of an allegedly incomplete inventory and unfair accounting, and regarding the number of distributive shares when he listed Clair as a successor in interest. They further contended that those material misrepresentations induced them to sign the Agreement, that their conduct in signing was therefore not an effective manifestation of assent, and that the Agreement was voidable by them.[3] *See Restatement (Second) of Contracts* § 164(1), at 445 (1981) ("If a party's manifestation of assent is induced by either a fraudulent or a material misrepresentation by the other party upon which the recipient is justified in relying, the contract is voidable by the recipient"). In July 1988 Valmore filed a motion for summary judgment on his petition for an order of complete settlement on the grounds that Roger and Norman knew all of the alleged problems with the net distributable estate and number of distributive shares before signing

the Agreement and that by nonetheless signing it and negotiating their distribution checks, they had settled all claims against the estate. *See* 18–A M.R.S.A. § 3–912 (1981) ("Private agreements among successors to decedent binding on personal representative"). The Probate Court granted summary judgment as Valmore requested. Roger and Norman appeal that ruling to this court.

■ The Agreement Among Successors contains two separate and divisible components. The inventory and accounting determine the net distributable estate, and the list of successors in interest determines the number of distributive shares. The undisputed facts establish that as a matter of law Roger and Norman fail in their contention that their assent to the net distributable estate is voidable because it was induced by material misrepresentations regarding the inventory and accounting. Roger and Norman signed the Agreement to fix the net distributable estate on the basis of the same inventory and accounting that they had previously contested. In signing it with full knowledge of what they claimed were shortcomings in the inventory and accounting, they essentially settled on the amount of the net distributable estate and are now foreclosed from raising any issue as to the validity of that part of the Agreement. *See Restatement (Second) of Contracts* § 163 comment b ("If the recipient had a reasonable opportunity to know the character or essential terms of the proposed contract ... his conduct is effective as a manifestation of assent"). Summary judgment was appropriate as to the agreed-upon net distributable estate.

■ With regard, however, to Roger and Norman's second contention, that by listing Clair in the proposed Agreement as a successor in interest entitled to a one-quarter share of the estate Valmore misrepresen-

---

**2.** The personal representative had previously distributed $10,000 to each of the four.

**3.** Roger and Norman also assert that they signed the Agreement under duress. In submitting the Agreement *to them* in October, Valmore told his half-brothers that he was planning an extended vacation and that they needed to sign

the Agreement promptly or they would have to wait for his return before the estate would be distributed. These facts do not allow a finding of duress sufficient to vitiate the Agreement. *See Restatement (Second) of Contracts* § 175 comment a; § 176 comment f (1981).

ted that he had investigated her status and determined her to be Lloyd's half-sister, we find that genuine issues of material fact remain to be resolved by the factfinder. The only basis upon which the half-brothers intended to include Clair in the distribution of Lloyd's estate was her relation to Lloyd as his half-sister. Shortly after Lloyd's death the question of Clair's parentage arose and when it was discussed among the half-brothers, Valmore promised to investigate and advise. Further, Valmore told Roger and Norman that he would pay Clair out of his personal share if his investigation revealed that she was not entitled to a distributive share. Valmore never reported back specifically on his investigation, but he did present the Agreement to Roger and Norman listing Clair as a successor in interest receiving a full quarter share of the estate, rather than sharing in Valmore's one-third share. Viewed most favorably to the appellants, the issues remaining to be determined by the factfinder at trial include whether Valmore impliedly represented that he had made an investigation, whether that representation was false, whether that representation induced the appellants to sign the Agreement, and whether Clair was in fact not a half-sister. We vacate the grant of summary judgment to this limited extent and remand for trial of these factual issues. As the moving parties seeking to annul the Agreement, Roger and Norman will bear the burden of proving at trial all elements of their claim of material misrepresentation and inducement. *See Luce v. Hoefler,* 464 A.2d 213, 215 (Me.1983).

The entry is:

Summary judgment as to the entitlement of Clair Turner to a one-quarter share in the estate vacated; summary judgment otherwise affirmed.

All concurring.